1  THOMAS S. SHADDIX, ESQ.
2  Nevada State Bar No.: 7905
   LAW OFFICE OF THOMAS S. SHADDIX
3  6166 South Sandhill Road
   Suite 146
4  Las Vegas, Nevada 89120
   Telephone: (702) 430-8420
5  Facsimile: (702) 522-6069
   Attorney for Plaintiff,
6  NATHANIEL SHAPIRO

7
                    UNITED STATES DISTRICT COURT
8                       DISTRICT OF NEVADA

9  **NATHANIEL SHAPIRO, an individual,**

10                                          Case No.: _____

              **Plaintiff,**
11                                          **COMPLAINT FOR:**
   **vs.**
12                                          **(1) COPYRIGHT INFRINGEMENT**
   **CABLE NEWS NETWORK, INC., a**          **(2) CIVIL CONSPIRACY**
13 **Delaware corporation, PART2 PICTURES** **(3) DECEPTIVE TRADE PRACTICES**
   **LLC, a New York limited liability**    **(4) DEFAMATION**
14 **company, LISA LING, an individual and****(5) TORTIOUS INTERFERENCE WITH**
   **authorized agent of a business entity**   **CONTRACT**
15 **currently of unknown form, COURTNEY**  **(6) BREACH OF CONTRACT**
   **THOMPSON, individually and as**        **(7) BREACH OF CONTRACT**
16 **authorized agent of Defendant PART2**  **(8) CIVIL EXTORTION**
   **PICTURES LLC, HEIDI BURKE,**
17 **individually and as authorized agent of** **JURY DEMAND**
   **Defendant PART2 PICTURES LLC,**
18 **JACKIE HURWITZ, individually and as**
   **authorized agent of Defendant PART2**
19 **PICTURES LLC, AMY BUCHER,**
   **individually and as authorized agent of**
20 **Defendant PART2 PICTURES LLC,**
   **VINCE KELVIN, a/k/a YANN VON**
21 **KANEL, an individual, BAO THAI VU,**
   **a/k/a "TYLER", an individual, LOS**
22 **ANGELES SELF-EMPOWERMENT**
   **CENTER, a/k/a THE SELF-**
23 **EMPOWERMENT CENTER, a business**
   **entity currently of unknown form; DOES 1**
24 **through 50, ROE Business Entities 51-100,**
25
              **Defendants.**
26
27
28

**COMES NOW,** Plaintiff Nathaniel Shapiro (hereinafter referred to as "Plaintiff"), by and through his attorney THOMAS S. SHADDIX, ESQ. of the LAW OFFICE OF THOMAS S. SHADDIX and avers as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action seeking damages and to obtain redress for, Defendants' blatant and purposeful infringement of the copyright in Plaintiff's Protected Work entitled "TransforMansion", a Treatment for a television production subject to Copyright protection pursuant to 17 U.S.C. §101, et seq.

2.      Plaintiff met Defendant Amy Bucher (hereinafter referred to as "Defendant Bucher") at an entertainment industry conference entitled "Reelscreen West" at Loews Santa Monica Beach Hotel in Santa Monica, California on June 4 - 5, 2014, during which time they discussed Plaintiff's Protected Work entitled "TransforMansion." Plaintiff's Protected Work entitled "TransforMansion" was formally registered with The United States Copyright Office on May 24, 2014.

3.      In the latter part of 2014 and 2015, Plaintiff was actively involved in numerous communications with Defendant Part2 Pictures LLC (hereinafter referred to as "Defendant P2P") regarding the format, theme and production of a television production based upon Plaintiff's Protected Work entitled "TransforMansion."

4.      Defendant P2P entered into negotiations with Plaintiff to produce a television episode based upon Plaintiff's Treatment to be broadcast on Defendant Cable News Network's (hereinafter referred to as "Defendant CNN") series entitled "This is Life With Lisa Ling", hosted by Defendant Lisa Ling (hereinafter referred to as "Defendant Ling"). Defendants created and publicized (or caused to be created and publicized) a television episode which prominently features substantially similar and significant portions of Plaintiff's Protected Work entitled "TransforMansion" without authorization from Plaintiff.

## JURISDICTION AND VENUE

5.      This is a civil action seeking damages for copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 101, et seq., as well as for damages for supplemental causes of action complained of herein.

6.      This Court has subject matter jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §1338(a).

7.      This Court has personal jurisdiction over Defendants because, among other things, Defendants are doing and/or have done business in the State of Nevada and in this judicial district, the acts of infringement complained of herein occurred in the State of Nevada and in this judicial district, and Defendants have caused injury to Plaintiff and his intellectual property within the State of Nevada and in this judicial district.

8.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

**THE PARTIES**

9.      Plaintiff Shapiro is a private businessman, author of the Protected Work entitled "TransforMansion", and the legal owner of a copyright interest in and to that Protected Work.

10.     Defendant CNN is an internationally-known cable and entertainment network which broadcasts and/or has broadcasted, among other programs, a series entitled "This is Life With Lisa Ling", hosted by Defendant Ling.

11.     Defendant P2P is a New York-based television production company which produces, among other productions, the series entitled "This is Life With Lisa Ling", hosted by Defendant Ling and broadcast on Defendant CNN.

12.     Defendant Ling is a television personality, journalist and author who, among other projects, hosts the series entitled "This is Life With Lisa Ling" which is and/or was broadcast on Defendant CNN.

13.     Defendant Courtney Thompson (hereinafter referred to as "Defendant Thompson") is an individual and authorized agent of Defendant P2P.

14.     Defendant Burke is an individual and authorized agent of Defendant P2P.

15.     Defendant Jackie Hurwitz (hereinafter referred to as "Defendant Hurwitz") is an individual and authorized agent of Defendant P2P.

16.     Defendant Bucher is an individual and authorized agent of Defendant P2P.

17.     Defendant Vince Kelvin, a/k/a Yann Von Kanel (hereinafter referred to as "Defendant Kelvin"), is an individual and once business associate of Plaintiff who engaged in civil conspiracy

-2-

1   with other Defendants herein by, *inter alia,* defaming Plaintiff. Defendant Kelvin's name is

2   potentially fictitious, as his birth name is Yann Von Kanel and Plaintiff is not sure whether said

3   Defendant's name was ever legally changed. Defendant Kelvin also referred to himself as "Vince

4   'Hollywood' Kelvin", "Vince 'The Kissing Saint' Kelvin" and "Vince 'The Saint' Kelvin."

5   Defendant Kelvin also has utilized and/or currently utilizes the acronym "C.HT." ("Certified

6   Hypnotherapist") after his name.

7        18.    Defendant Bao Thai Vu, a/k/a "Tyler" (hereinafter referred to as "Defendant Vu") is

8   a former business associate of Plaintiff's, and a business associate of Defendant Kelvin who engaged

9   in civil conspiracy with other Defendants herein by, *inter alia,* defaming Plaintiff.

10       19.    Defendant Los Angeles Self Empowerment Center, a/k/a the Self-empowerment

11  Center, (hereinafter referred to as "Defendant LASEC") is, upon information and belief, a fictitious

12  business entity currently of unknown form which entered into a contract through its principal,

13  Defendant Kelvin,  to sell its business to Plaintiff on August 20, 2012 for the sum of seven thousand

14  five hundred ($7,500.00) dollars, which Plaintiff paid.

15       20.    The true names and capacities, whether individual, corporate, associate, or otherwise,

16  of defendants sued herein as Does 1 through 50 and Roe Business Entities 51-100, are unknown to

17  Plaintiff, who therefore sues said defendants by such fictitious names (the "Doe/Roe Defendants").

18  Plaintiff will seek leave of Court to amend this complaint to state their true names and capacities

19  when they have been ascertained. Plaintiff is informed and believe and on that basis aver that the

20  Doe/Roe Defendants are liable to Plaintiff as a result of their participation in all or some of the acts

21  hereinafter set forth. Defendants CNN, P2P, Ling, Thompson, Burke, Hurwitz, Bucher, Kelvin, Vu,

22  LASEC and the Doe/Roe Defendants are referred to collectively herein as "Defendants."

23       21.    Plaintiff is informed and believes and on that basis avers that at all times mentioned

24  in this complaint, each of the Defendants was the agent and/or alter ego of each of the other

25  Defendants and, in doing the things alleged in this complaint, was acting within the course and scope

26  of such agency.

27                              **GENERAL AVERMENTS**

28       22.    Plaintiff is the original author of the Protected Work "TransforMansion" Plaintiff

owns the rights and title to the copyright in the Work "TransforMansion" (the "Infringed Work").

23.     Plaintiff filed an application for copyright registration with The United States Copyright Office for the Protected Work "TransforMansion", and on May 24, 2014 The United States Copyright Office granted a certificate of registration. A true and correct copy of Plaintiff's Certificate of Copyright Registration is annexed hereto as Exhibit "1", and incorporated herein by this reference.

24.     At the Reelscreen West convention in Santa Monica, California on June 4 - 5, 2014, Plaintiff met and spoke with Defendant Bucher about the project "TransforMansion." At that convention, Defendant Bucher received a copy of the Treatment for "TransforMansion" for production consideration which was, at that time, federally-registered with The United States Copyright Office.

25.     Plaintiff later learned that his name and project had been discussed in the P2P office from Defendant Bucher to Defendant Burke, and that Defendant Bucher remembered meeting and recalled being interested speaking with Plaintiff at Reelscreen West.

26.      Defendant Burke is the Executive Series Producer of Defendant Ling's "This Is Life With Lisa Ling."

27.     During a subsequent telephone call, Defendant Burke confirmed verbally to Plaintiff that his project is "guaranteed" for an episode of "This is Life With Lisa Ling."

28.     For several months, Defendant Burke typed copious notes at her keyboard whenever she and Plaintiff had telephone conversations. Plaintiff and Defendant Burke spoke numerous times over the phone, and Plaintiff sent her written materials by email over the course of months from approximately October, 2014 to January, 2015.

29.     Defendant P2P and Defendant Burke initially assumed there was no federal copyright registration for the Protected Work "TransforMansion" and that it was only registered with the Writer's Guild of America, but later acknowledged that she had discovered that in fact there was a federal copyright registration for the Protected Work "TransforMansion."

30.     At one point Defendant Burke informed Plaintiff that she had a confidentiality agreement that she needed to him to sign, and further indicated that if Plaintiff had anything that he

would like Defendant P2P to sign that he should send it to her for execution. Defendant Burke never sent any such confidentiality agreement to Plaintiff.

31.     From early in their relationship Defendant P2P used Plaintiff's materials which were sent to Defendant P2P in furtherance of their forthcoming production project to approach network executives at Defendant CNN, in order to get the topic of the episode approved. The topic of the episode was approved by Defendant CNN using Plaintiff's protected materials.

32.     After receiving approval for the production from Defendant CNN, Plaintiff received an email on January 14, 2015 from Defendant P2P's series executive producer, Defendant Burke stating "Great news! We've finally got the word and it's a GO for the plan we came up with yesterday! We are super excited about it! So it would be something like: [followed by a proposed filming and production schedule of dates]."

33.     After approval, Defendant Burke continued to call Plaintiff and talk for lengthy periods of time with questions about the project while taking copious notes. Defendant Burke also sent Plaintiff a text message in which she stated unequivocally that she could not have proceeded with this episode without Plaintiff.

34.     Defendant Thompson came onto the project in or about late November/early December, upon information and belief, after Defendant Thompson finished her work with another Defendant P2P production and well after Plaintiff had begun regularly communicating with P2P. Of all of the P2P Defendants named herein, Defendant Thompson has the most influential relationship with Defendant Ling.

35.     Upon information and belief, the P2P individual defendants, including without limitation Defendant Thompson, had mutual acquaintance(s) and/or connections with Defendant Kelvin.

36.     On August 20, 2012, Plaintiff and Defendant LASEC through its principal, Defendant Kelvin, entered into an Agreement entitled "Pickup Artist Summit Purchase Agreement." *Inter alia,* this Agreement contains Non-Compete, Non-Disclosure, Confidentiality and Liquidated Damages provisions. Plaintiff paid the sum of seven thousand five hundred ($7,500.00) dollars in consideration for this Agreement.

37.     During a telephone call between Plaintiff and Defendant Kelvin, who were business associates at the time, and are now prior business associates, Plaintiff became aware that Defendant Kelvin had been in discussions with an authorized agent or agents of Defendant P2P. These discussions with an authorized agent or agents of Defendant P2P also included Defendant Vu.

38.     Defendant Kelvin and Defendant Vu wrongfully and dishonestly impugned the character and business reputation of Plaintiff to an authorized agent or agents of Defendant P2P.

39.     Defendant Kelvin and Defendant Vu made vexatious, vile, outrageous and malicious material misrepresentations of fact regarding Plaintiff to an authorized agent or agents of Defendant P2P in an attempt to persuade Defendant P2P to utilize Defendant Kelvin in the episode. Without limitation, one such material misrepresentation of fact regarding Plaintiff was that Defendant Kelvin utilized coaching techniques which were in fact Plaintiff's coaching techniques, and that Plaintiff's techniques were in fact more similar to Defendant Kelvin's much more aggressive and physical approach, including his use of drugs and alcohol, as a self-confessed addict, to induce, manipulate, isolate and seduce women, regarding the subject matter of the television episode.

40.     At least three (3) of the proposed participants in the final television episode were under exclusive contract with the Plaintiff. Nevertheless, the P2P Defendants, Defendant Kelvin and Defendant Vu aggressively and relentlessly pressured these three (3) proposed participants in the television episode to sign releases allowing their likenesses, voices and other rights of publicity to be utilized in the television episode which would, unknown to Plaintiff at that time, feature Defendant Kelvin and not Plaintiff. Signing such releases would have been in direct contravention of the exclusive contracts these three (3) proposed participants in the television episode had with the Plaintiff, and thus would constitute a material breach of the same.

41.     During the time that Defendant Kelvin was actively engaged in taking over the television production project from Plaintiff starting in or about in early January, 2015, Defendant Kelvin demanded that Plaintiff sell him back the project as referenced in paragraph 80 hereinbelow for the sum of one thousand five hundred ($1,500.00) dollars. Not surprisingly, Plaintiff declined Defendant Kelvin's demand. Thereafter, Defendant Kelvin said he would just tear up the Agreement and threatened Plaintiff that if Plaintiff did not accede to his demands, that he would destroy

Plaintiff's business and cause him other business, financial, damage to reputation and personal harm, and viciously and threateningly made antisemitic epithets against Plaintiff, which were both unequivocally direct and also transparently inferring greed. A "screen shot" of one such unequivocally direct antisemitic epithet sent by Defendant Kelvin to Plaintiff via text message was sent to Defendant P2P, which it chose to ignore.

42.     Defendant Kelvin proceeded with his threatened course of action, and undertook actions to destroy Plaintiff's ancillary PUA Summit business which Plaintiff purchased from Defendant Kelvin. Defendant Kelvin violated the August 20, 2012 Agreement with advertising and marketing help from the P2P defendants, including an online interview with Defendant Hurwitz. More recently, Defendant Kelvin has been marketing and selling Plaintiff's proprietary PUA Summit materials, DVDs and other materials in California and worldwide on the Internet, and passing them off as his own, which constitutes both fraudulent intent and theft.

43.     On Friday, January 23, 2015, Defendant Ling, Defendant Thompson and Defendant Hurwitz visited with Plaintiff in Las Vegas at his Project Vegas Mansion, allegedly for the purposes of discussing the upcoming filming and production schedule. Based upon their demeanor, behavior and the subject matter of their lines of questioning, Defendant was then, and is now, informed and believes that Defendant P2P, as well as Defendant Ling, Defendant Thompson and Defendant Hurwitz had no intention of proceeding with the television episode with Plaintiff as had been confirmed by Defendant Burke in her January 14, 2015 email. *Inter alia,* Defendants Ling and Thompson oddly questioned Plaintiff about how much money he was making in the industry and whether he had ever practiced "Kosher" disciplines as a person of the Hebrew faith.

44.     On the very next business day, Monday, January 26, 2015, Plaintiff's suspicions were confirmed when Plaintiff received an email from Defendant Bucher, Senior Executive Producer of Defendant P2P, that Defendant P2P had decided not to proceed with Plaintiff on the project.

45.     After the airing of the episode, and without limitation, Defendant P2P arranged for Defendant Kelvin to appear on the Steve Harvey Show, received other publicity and promotional value and still has an article posted on "www.cnn.com", all to Plaintiff's damages.

46.     Defendants, and each of them, do not now have, nor have they ever had, any license

or authorization to use the Infringed Work.

47.    The original air date of Defendants' episode of "This is Life With Lisa Ling" was on or about December 9, 2015 (Season 2, Episode 7), and was entitled "The Seduction Game." This episode title also was a product of the Friday, January 23, 2015 meeting between Plaintiff and Defendants Ling, Thompson and Hurwitz in Las Vegas at his Project Vegas Mansion

48.    Recognizing the value and uniqueness of Plaintiff's Protected Work, and in a brazen and improper effort to capitalize on Plaintiff's original work of authorship fixed in a tangible medium of expression, Defendant P2P and its agents, Defendants Hurwitz and Thompson, engaged in a civil conspiracy with Defendants Ling and Kelvin to remove Plaintiff from the television production project.

49.    Plaintiff is entitled to damages and redress for Defendants', and each of their willful, intentional and purposeful use and exploitation of the Infringed Work for their own financial benefit with full knowledge that such use constituted infringement of, and was in disregard of, Plaintiff's rights.

**COUNT I**

**<u>COPYRIGHT INFRINGEMENT</u>**

**(17 U.S.C. §§ 106 and 501)**

**(By Plaintiff Against Defendants)**

50.    Plaintiff incorporates herein by this reference each and every averment contained in paragraphs 1 through 49, inclusive.

51.    Through their conduct averred herein, Defendants have infringed Plaintiff's copyright in the Infringed Work in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

52.    Defendants' acts of infringement are willful, purposeful, intentional and tantamount to thievery, in disregard of and with indifference to Plaintiff's rights.

53.    As a direct and proximate result of said infringement by Defendants, Plaintiff is entitled to damages in an amount to be proven at trial, including Statutory Damages.

54.    Plaintiff is also entitled to Defendants' profits attributable to the infringement,

pursuant to 17 U.S.C. § 504(b), including an accounting of and a constructive trust with respect to such profits.

55.     Plaintiff is further entitled to his attorneys' fees and full costs pursuant to 17 U.S.C. §505 and otherwise according to law.

## COUNT II

## CIVIL CONSPIRACY

### (By Plaintiff Against Defendants P2P, Thompson, Bucher, Burke, Hurwitz, Ling, Kelvin and Vu)

56.     Plaintiff incorporates herein by this reference each and every averment contained in paragraphs 1 through 55, inclusive.

57.     This Court has Supplemental Jurisdiction over this Cause of Action pursuant to 28 U.S.C. 1367(a).

58.     As set forth above, the named defendants, Defendant P2P, Defendant Thompson, Defendant Ling, Defendant Burke, Defendant Bucher, Defendant Hurwitz and Defendant Vu engaged in a civil conspiracy with Defendant Kelvin and Defendant LASEC to illegally misappropriate Plaintiff's intellectual property. They agreed with one another to engage in a fraud that violated state and federal statutory and common law. That conduct constituted an agreement to accomplish an unlawful objective, which constitutes a civil conspiracy. Defendants, and each of them, should be required to preserve all analog and digital documents, as well as all raw footage and audio recordings in anyway appertaining to this litigation, without limitation.

59.     Plaintiff has suffered and will continue to suffer actual financial damage as a result of the named Defendants' civil conspiracy.

## COUNT III

## VIOLATION OF N.R.S. 598.0915 - DECEPTIVE TRADE PRACTICES

### (By Plaintiff Against All Responsible Defendants)

60.     Plaintiff incorporates herein by this reference each and every averment contained in paragraphs 1 through 59, inclusive.

61.     This Court has Supplemental Jurisdiction over this Cause of Action pursuant to 28 U.S.C. 1367(a).

62.     Defendants, and each of them, have "[k]nowingly [made] false representation[s] as to the source, sponsorship, approval or certification of goods or services for sale or lease", all to Counterclaimant's damages. See N.R.S. 598.0915(2).

63.     Defendants, and each of them, have [d]isparage[d] the goods, services or business of another person by false or misleading representation of fact", all to Counterclaimant's damages. See N.R.S. 598.0915(8).

64.     Defendants, and each of them, have "[k]nowingly [made] . . . other false representation[s] in a transaction, all to Counterclaimant's damages. See N.R.S. 598.0915(15).

**COUNT IV**

**DEFAMATION**

**(By Plaintiff Against Defendant Kelvin, Defendant Vu and Defendant Thompson)**

65.     Plaintiff incorporates herein by this reference each and every averment contained in paragraphs 1 through 64, inclusive.

66.     This Court has Supplemental Jurisdiction over this Cause of Action pursuant to 28 U.S.C. 1367(a).

67.     In or about late 2014 and early 2015, Defendant Kelvin, Defendant Vu and Defendant Thompson published to Defendants P2P, Burke, Bucher and Hurwitz vexatious, vile, malicious and calculated untrue and material misrepresentations of fact concerning Plaintiff in a transparent and vicious attempt to wrongfully damage Plaintiff's reputation and have him excluded from involvement with the "This is Life With Lisa Ling" project which was based upon Plaintiff's Protected Work.

68.     Plaintiff is a private citizen and not a public figure, and thus upon a showing of the untruthfulness of the above-stated untrue and material misrepresentations of fact concerning Plaintiff,

damages are presumed without a showing of actual malice.

69.     As a proximate result of the above-described publication, Plaintiff has suffered loss of his business reputation, mortification, and emotional distress, all to his damages in a total amount to be established by proof at trial.

**COUNT V**

**TORTIOUS INTERFERENCE WITH CONTRACT**

**(By Plaintiff Against Defendants P2P, Thompson, Bucher, Burke, Hurwitz, Ling,**

**Kelvin and Vu)**

70.     Plaintiff incorporates herein by this reference each and every averment contained in paragraphs 1 through 69, inclusive.

71.     This Court has Supplemental Jurisdiction over this Cause of Action pursuant to 28 U.S.C. 1367(a).

72.     At least three (3) of the proposed participants in the television episode were under exclusive contract with the Plaintiff.

73.     The P2P Defendants, Defendant Kelvin and Defendant Vu knew and had been informed of the existence of these contracts. Upon information and belief, Defendant P2P has exhibited a past pattern of business conduct in previous productions quite similar to their treatment of Plaintiff relative to the production at issue herein.

74.     Nevertheless, the above-named Defendants aggressively and relentlessly pressured all on-camera character-actors, especially the three (3) proposed character-actors under exclusive contract with Plaintiff, in the television episode to sign releases allowing, without limitation, their likenesses, voices and other rights of publicity to be utilized in the television episode.

75.     These three (3) proposed character-actors appeared in the television episode, and, without limitation, at least one of their voices is clearly heard and identifiable in the episode, and to others in group chatter, in contravention of the exclusivity provisions of the contract with Plaintiff.

76.     As a direct and proximate result of the above, Plaintiff has suffered damages.

**COUNT VI**

**BREACH OF CONTRACT**

**(By Plaintiff Against Defendants Kelvin and LASEC**)

77.     Plaintiff incorporates herein by this reference each and every averment contained in paragraphs 1 through 76, inclusive.

78.     This Court has Supplemental Jurisdiction over this Cause of Action pursuant to 28 U.S.C. 1367(a).

79.     On August 20, 2012, Plaintiff and Defendant LASEC, through Defendant Kelvin, the owner of Defendant LASEC, entered into an Agreement entitled "Pickup Artist Summit Purchase Agreement." Plaintiff paid the sum of seven thousand five hundred ($7,500.00) dollars in consideration for this Agreement. Upon information and belief and in retrospect, Defendant Kelvin did not even own the rights to the "Pickup Artist Summit" as it was described to Plaintiff by Defendant Kelvin at the time the Purchase Agreement was entered into.

80.     In or about early January, 2015, when Defendant Kelvin was actively engaged in taking over the television production project from Plaintiff, Defendant Kelvin demanded that Plaintiff sell him back the project referenced in the previous paragraph for the sum of one thousand five hundred ($1,500.00) dollars. Plaintiff declined. Then, incredibly,  Defendant Kelvin said he would pay no money for the requested buy-back of the Agreement and would just tear it up.

81.     Thereafter, Defendant Kelvin threatened Plaintiff that he would just disregard it (the Agreement) and as stated, tear it up, and further would destroy Plaintiff's business and cause him other business, financial, damage to reputation and personal harm, and viciously and threateningly made antisemitic epithets against Plaintiff.

82.     In addition to violating the non-compete covenant of the PUA Summit business sale contract, Defendant Kelvin and LASEC also violated the confidentiality provisions on multiple occasions.

-14-

83.     Defendant Kelvin violated the August 20, 2012 Agreement with advertising and marketing help from the P2P defendants, including an online interview with Defendant Hurwitz. More recently, Defendant Kelvin has been marketing and selling Plaintiff's proprietary PUA Summit materials, DVDs and other materials at his events, not just in California but worldwide via the Internet, and passing them off as his own, which constitutes both fraudulent intent and theft. Defendant Kelvin has also used images, screen shots and links to the episode in his own social media and Internet marketing materials via email.

84.     Plaintiff has thus failed to receive the benefit of his bargain with Defendant Kelvin for which he paid the sum of seven thousand five hundred ($7,500.00) dollars in consideration therefor, all to Plaintiff's damages.

**COUNT VII**

**BREACH OF CONTRACT**

**(By Plaintiff Against Defendant Vu)**

85.     Plaintiff incorporates herein by this reference each and every averment contained in paragraphs 1 through 84, inclusive.

86.     This Court has Supplemental Jurisdiction over this Cause of Action pursuant to 28 U.S.C. 1367(a).

87.     On or about September 19, 2013, Plaintiff and Defendant Vu, for valid consideration, entered into a Confidentiality Agreement regarding their business relationship.

88.     On or about September 19, 2013, October 11, 2013 and March 17, 2014, Plaintiff and Defendant Vu, for valid consideration, entered into a Confidentiality Agreement, and two (2) Independent Contractor Agreements regarding their business relationship.

89.     By virtue of Defendant Vu's conduct complained of herein, including without limitation civil conspiracy and defamation, Defendant Vu materially breached the above-stated Agreements, including without limitation material breaches of the confidentiality and non-compete provisions thereof by working with, and sharing information with, Defendant Kelvin, all to Plaintiff's damages.

90.     Plaintiff has thus failed to receive the benefit of his bargain(s) with Defendant Vu for which he provided good and valuable consideration, all to Plaintiff's damages.

### COUNT VIII

### CIVIL EXTORTION

**(By Plaintiff Against Defendant Kelvin)**

91.     Plaintiff incorporates herein by this reference each and every averment contained in paragraphs 1 through 90, inclusive.

92.     This Court has Supplemental Jurisdiction over this Cause of Action pursuant to 28 U.S.C. 1367(a).

93.     When Plaintiff refused to sell back the PUA Summit Agreement entered into on August 20, 2012, Defendant Kelvin threatened Plaintiff that if Plaintiff did not accede to his demands, he would destroy Plaintiff's business and cause him other business, financial, damage to reputation and personal harm, and viciously and threateningly made multiple antisemitic epithets against Plaintiff.

94.     Defendant Kelvin proceeded to undertake actions to attempt to destroy Plaintiff's business interests. As further manifestation of Defendant Kelvin's unlawful purpose and consciousness of the same is demonstrated by Defendant Kelvin's attempts to intimidate Plaintiff. Defendant Kelvin has been marketing and selling Plaintiff's proprietary PUA Summit materials, DVDs and other materials not just in California but worldwide via the Internet, and passing them off as his own, which constitutes both fraudulent intent and theft.

95.     Defendants' activities constitute civil extortion under both Nevada and California law and are contrary to public policy.

96.     As a direct and proximate cause of Defendant Kelvin's actions, Plaintiff has suffered disruption to his business, loss of productivity, loss of business goodwill, substantial litigation expense, additional operational expense, and other damages in an amount to be proven at trial.

/ / /

/ / /

**WHEREFORE,** Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1.      For damages in an amount not less that Ten Million ($10,000,000.00) Dollars, or as otherwise permitted by law;

2.      For statutory damages as permitted in 17 U.S.C. §101, et seq.;

3.      For an accounting of, and the imposition of constructive trust with respect to, Defendants' profits attributable to their infringements of Plaintiff's copyright in the Infringed Work;

4.      For prejudgment interest according to law;

5.      For punitive damages in an amount to be determined by the Court for the intentional torts committed against Plaintiff in this matter;

6.      For Plaintiff's attorneys' fees, costs, and disbursements in this action;

7.      For such other and further relief as the Court may deem just and proper.

Dated this 9th day of December, 2017.

Respectfully submitted,

LAW OFFICE OF THOMAS S. SHADDIX

/s/ Thomas S. Shaddix
THOMAS S. SHADDIX, ESQ.
Nevada State Bar No.: 7905
6166 South Sandhill Road
Suite 146
Las Vegas, Nevada  89120
Telephone: (702) 430-8420
Facsimile: (702) 522-6069
Attorney for Plaintiff,
NATHANIEL SHAPIRO

/ / /

/ / /

## <u>VERIFICATION OF NATHANIEL SHAPIRO PURSUANT TO 28 U.S.C. 1746</u>
## <u>IN SUPPORT OF COMPLAINT</u>

NATHANIEL SHAPIRO declares as follows:

1.      I am an adult and am competent to make the following declaration and statements of fact of my own personal knowledge, except as to those statements made upon information and belief, and as to those matters, I believe them to be true.

2.      That pursuant to the provisions of 28 U.S.C. 1746, I hereby declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct of my own personal knowledge, except as to those statements made upon information and belief, and as to those matters, I believe them to be true.

Executed this 9th day of December, 2017 at Las Vegas, Nevada.

/s/ Nathaniel Shapiro
NATHANIEL SHAPIRO

-18-